UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-CR-0168-CVE |
| ) | |
| CASEY ADAM PARKER, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is defendant Casey Adam Parker's motion to suppress statements (Dkt. # 23) pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). Plaintiff has filed a response in opposition (Dkt. # 27).

On August 6, 2019, a grand jury returned an indictment charging defendant with one count of attempted coercion and enticement of a minor. Dkt. # 2. Plaintiff alleges that defendant responded to posts arranging a meeting with what he thought was a fourteen-year-old girl, but was actually a Tulsa Police Department (TPD) officer. Dkt. # 27, at 1. The officer and an FBI agent conducted surveillance at the meeting spot and watched defendant drive up and then drive away. Id. The officers then pulled defendant over and questioned him. Id. Prior to interviewing defendant, the officers handcuffed him and placed him in the passenger seat of a police vehicle. Id. at 2. A video recording device captured the interaction. Id.

The Court has viewed the videotaped interview.[1] First, the TPD officer informed defendant that he would read defendant his rights prior to questioning him. Dkt. # 28, at 4:12 p.m. The officer

---

[1] The timestamp in the video reads that the start of the video is 6:18 p.m.; however, the TPD officer states that the start time is actually 4:10 p.m. The Court will apply a subtrahend of two hours and eight minutes to any timestamp on the video referenced herein.

then asked defendant his legal name and education level. Id. The officer informed defendant that he had the right to remain silent and that anything he says can and will be used against him in court. Id. at 4:13 p.m. He was further advised that he had the right to talk to a lawyer before they asked him any questions, and have the lawyer with him during questioning; that if he could not afford a lawyer, the court would appoint one for him prior to questioning; and that if he would like to answer questions at that time without a lawyer present, he may do so. Id. Afterwards, the following exchange occurred:

> TPD Officer: If you want to answer me, without a lawyer present, you may do so. You have the right to stop answering questions at any time. Do you understand those rights I've read to you?
>
> Defendant: Yes.
>
> TPD Officer: Okay. Keeping those in mind, <u>do you want to talk to us, remembering you can stop anytime you want?</u>
>
> Defendant: <u>Okay</u>, I don't know why I'm being pulled over.
>
> TPD Officer: Well, uh, you're being pulled over under suspicion of, uh, having an inappropriate conversation with a minor.
>
> Defendant: Alright.
>
> TPD Officer: Okay. Um, maybe it's not, maybe it is, but we have reason to believe that you were going to be here, we knew who you were before you'd be here. <u>Do you have anything to say about that?</u>
>
> Defendant: <u>No.</u>
>
> TPD Officer: Okay. What are you doing over here?

Id.

Defendant first claimed that he was visiting a friend down the street. Id. at 4:14 p.m. The officer stated that he knew defendant would be here. Id. The officer then asked what was going on

2

with the minor ("Madison"). Id. at 4:15 p.m. He asked if defendant had been talking to Madison. Id. Defendant said no. Id. After being asked if he had telephone applications used to communicate with minors, defendant again stated that he was here to see a friend. Id. at 4:15 p.m. - 4:16 p.m. Defendant claimed he had done nothing wrong. Id. at 4:21 p.m. The officer stated that they had gotten a call that day and that Madison's mother had discovered Madison's communications with defendant over an online application. Id. at 4:27 p.m. - 4:28 p.m. The officer asked if defendant had received any nude photographs from Madison, and defendant responded that he had not. Id. at 4:28 p.m. Defendant then stated that he was not trying to incriminate himself, but that someone had stated that they were bored, and defendant asked if they had ever been to the Gathering Place. Id. Defendant stated that he planned to take Madison to a public area. Id. However, after arriving at the meeting spot, defendant stated that he changed his mind and decided to go and see his friend down the street. Id. at 4:31 p.m. Defendant stated that he wanted only to hang out with Madison. Id. Defendant stated that Madison told him that the Gathering Place is not private. Id. at 4:31 p.m. - 4:32 p.m. The officer informed defendant that Madison was being interviewed and that she is fourteen; defendant acknowledged this. Id. at 4:32 p.m. - 4:33 p.m. Defendant stated that he had exchanged facial pictures with Madison. Id. at 4:34 p.m. The officer stated that Madison had mentioned alcohol, but defendant did not admit to this. Id. at 4:35 p.m. Defendant stated that he had abandoned his plans to hang out with Madison because he would be taking a fourteen-year-old to the Gathering Place. Id. at 4:38 p.m. Defendant stated that he did not know whether Madison was real or fake. Id. at 4:39 p.m. Defendant consented to the officers searching his car to ensure he had no materials to be used to kidnap Madison. Id. at 4:41 p.m. - 4:43 p.m. The officer stated that Madison had mentioned possible sexual activity and defendant stated that that was her and not him;

3

he stated that he thought that Madison was fake. Id. at 4:47 p.m. The officer asked if it was true that defendant told Madison that he could not get her pregnant and he said yes, that he gets what the officer is saying, but that it had nothing to do with the reason he was there. Id. He then stated that "if [he] need[ed] to talk to his attorney, that he did not feel comfortable with the conversation." Id. at 4:47 p.m. - 4:48 p.m. He then stated that all he wanted to do was hang out and that anything inappropriate was on her end. Id. at 4:46 p.m. After a brief silence, the officer then asked if that was all defendant had to say and defendant said yes. Id. at 4:46 p.m. - 4:47 p.m. The officer then told defendant that he was going to jail. Id. at 4:49 p.m. Defendant stated that he did not understand the charges against him and the officer responded that he was sorry, but that he could no longer answer those questions. Id. at 4:50 p.m. During the entire interview, two officers were sitting in the back seat, one in the passenger's seat, and defendant was handcuffed. No written Miranda waiver was signed prior to the interview.

Defendant argues that any waiver he gave to questioning was verbal rather than written and, as such, was an invalid waiver of his Miranda rights. Dtk. # 23, at 1. Defendant also argues that, by responding "no" and shaking his head side to side in response to the officer's question of whether he had anything to say about why he was arrested, he invoked his right to remain silent. Id. at 2.

**I.**

"Miranda v. Arizona holds that the Fifth Amendment guarantees a suspect in custody the right to refuse questioning or to have retained or appointed counsel present during questioning." Smith v. Duckworth, 824 F.3d 1233, 1246 (10th Cir. 2016) (citing Miranda v. Arizona, 384 U.S. 436, 444-45 (1966)).

**A.**

Defendant's first argument is that he never waived his right to remain silent. Dkt. # 23, at 1. A defendant may waive their Miranda rights, but must do so "voluntarily, knowingly and intelligently." Id. at 1247 (internal citation omitted). Determination of a valid waiver requires two inquiries:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Id. (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of [a] waiver, but is not inevitably either necessary or sufficient to establish waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979) (emphasis added). The Supreme Court has held that an express oral waiver without the presence of a written waiver is sufficient to waive a suspect's Miranda rights. See id. at 371.

Defendant argues that he did not waive his Miranda rights because he did not sign a written waiver. Dkt. # 23, at 1. However, courts have never held that a written waiver is required; in fact, the opposite is true. See Butler, 441 U.S. at 371 (verbal waiver was sufficient); see also United States v. Yazzie, 188 F.3d 1178, 1193 (10th Cir. 1999) (defendant's "refusal to sign the advice of rights form was clearly overridden by [his] verbal indication he understood his rights and was willing to talk"). The Court has viewed the videotaped interview of defendant. After being read his Miranda rights and in response to the officer's question of whether defendant wanted to talk, defendant responded, "Okay, I don't know why I'm being pulled over." Dkt. # 28, at 4:11 p.m. By

5

responding in the affirmative and continuing to answer questions for approximately thirty-five minutes, defendant waived his right to remain silent. Defendant's response was voluntary because there is no evidence in the entire videotape of intimidation, coercion, or deception. Although he was under arrest and handcuffed, the officers were merely having a conversation with defendant. Defendant was free to answer the officers' questions or decline to answer. Defendant's response was also knowing and intelligent, because he was fully aware of his rights. This must be so, because the officer read defendant his Miranda rights and he indicated that he understood those rights by answering "Okay." Further, defendant is a high school graduate, speaks English, and appears to have physical and emotional attributes that make him capable of choosing to speak or remain silent. The Court finds that defendant voluntarily, knowingly, and intelligently waived his Miranda rights when he verbally assented to the interview and continued to answer the officer's questions for approximately thirty-five minutes.

**B.**

Defendant's second argument is that he invoked his right to remain silent by responding "no" and shaking his head side to side. Dkt. # 23, at 2. A suspect must unambiguously invoke their right to remain silent. Berghuis v. Thompkins, 560 U.S. 370, 381 (2010). "Determining whether a suspect has invoked his right to counsel 'is an objective inquiry.'" United States v. Nelson, 450 F.3d 1201, 1212 (10th Cir. 2006) (quoting Davis v. United States, 512 U.S. 452, 459 (1994)). "The question is whether the suspect's statement is sufficiently clear that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. (internal quotation marks omitted).

6

Defendant argues that he invoked his right to remain silent by responding "no" to the officer's question whether he had anything to say about why he was being pulled over. Dkt. # 23, at 2. Answering "no" to a question during an interrogation is at most an ambiguous statement that defendant might have wanted to end the interview. If the statement was ambiguous, the officers need not have asked whether defendant wanted to invoke his right to remain silent. See Davis, 512 U.S. at 458-59. This is in contrast to defendant's statement that "if [he] need[ed] to talk to his attorney, that he did not feel comfortable with the conversation," which is unambiguous. Dkt. # 28, at 4:45 p.m. - 4:46 p.m. After this latter statement was made by defendant, the officer terminated the interview.

The Court finds that defendant talked to the officers and answered questions for thirty-five minutes, indicating that he did not intend to invoke his right to remain silent; it was not until approximately thirty-five minutes into the interview that defendant clearly invoked his Miranda rights, and the interview ended at that point. Id. at 4:45 p.m. - 4:46 p.m. The Court finds that defendant did not invoke his right to remain silent until approximately thirty-five minutes into the interview. Therefore, because defendant waived his right to remain silent and did not invoke the right until after he made his alleged confession, his statements during the interview are admissible.

## II.

Defendant requests a Jackson v. Denno hearing for the Court to determine whether his statements are admissible. Dkt. # 23, at 2. "[A] defendant who objects to the admission of a confession on voluntariness grounds has a constitutional right to a fair hearing and an independent and reliable determination of voluntariness before the confession is allowed to be heard by the jury." Lucero v. Kerby, 133 F.3d 1299, 1310 (10th Cir. 1998) (citing Jackson v. Denno, 378 U.S. 368, 376

(1964)); see also 18 U.S.C. § 3501 ("Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issues as to voluntariness."). "At this hearing, both the underlying factual issues and the voluntariness of the confession must be actually and reliably determined." Id. (internal quotation marks omitted).

However, because the Court has watched the videotaped interview and concluded that defendant's statements were voluntarily made, see IA, supra, the Court will not hold a Jackson v. Denno hearing prior to trial. Defendant is not challenging that his confession was involuntary; he is claiming instead that he did not waive his Miranda rights but, rather, he invoked his right to remain silent. See Dkt. # 23, at 1-2. Should plaintiff attempt to introduce the confession at trial, the Court will hold a hearing outside the presence of the jury before admitting defendant's statements. The Court finds that defendant's motion for a Jackson v. Denno hearing should be denied at this time.

**IT IS THEREFORE ORDERED** that defendant's motion to suppress (Dkt. # 23) is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion for a Jackson v. Denno hearing is **denied** at this time.

**DATED** this 25th day of November, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE